IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHIL SALAZAR,

          Plaintiff,

v.                                 No. CIV-11-0960 LAM

MICHAEL J. ASTRUE,  Commissioner
of the Social Security Administration,

          Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 19)*, filed April 10, 2012.  In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 3* and *6*].  The Court has reviewed Plaintiff's motion, Defendant's ***Response to Plaintiff's Motion to Reverse or Remand*** *(Doc. 20)*, filed June 7, 2012, Plaintiff's ***Reply to Defendant's Response to Motion to Reverse and Remand*** *(Doc. 21)*, filed June 21, 2012, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 13* and *14*].  For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

# I.  Procedural History

On August 23, 2007, Plaintiff filed applications for Supplemental Security Income (hereinafter "SSI") and Disability Insurance Benefits (hereinafter "DIB"), alleging that he became disabled on August 10, 2004.  [*Doc. 13-4* at 2 and 3] and [*Doc. 13-6* at 2-7 and 8-15].  Plaintiff stated that he became disabled due to a back injury (*Doc. 13-7* at 45).  His applications were denied at the initial level on September 26, 2007 (*Doc. 13-5* at 2-5) and at the reconsideration level on January 15, 2008 (*id.* at 9-11 and 12-14).  On June 6, 2008, Plaintiff requested a hearing (*id.* at 15-17), and on July 28, 2009, Administrative Law Judge Dan Dane (hereinafter "ALJ") conducted a video teleconference hearing (*Doc. 13-3* at 37-66).  Plaintiff was represented by counsel and testified at the hearing.  *Id.* at 39, 51-58.  Vocational Expert Barbara Dunlap (hereinafter "VE") also testified at the hearing.  *Id.* at 58-65.

On January 28, 2010, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 13-3* at 25-33].  On March 10, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 20) and, on September 9, 2011, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner.  On October 27, 2011, Plaintiff filed his complaint in this case.  [*Doc. 1*].

# II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human*

*Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."   20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on May 3, 1968.  [*Doc. 13-7* at 25].  Plaintiff has worked as a humane officer, waste-water laborer, counselor, maintenance worker, sheriff's deputy, residential advisor

and security guard. *Id.* at 17 and 46.  Plaintiff alleges that he became disabled on August 10, 2004, and he is unable to work because of a back injury. *Id.* at 45.

Plaintiff's medical records document treatment and records from Alta Vista Regional Hospital; Northeastern Regional Hospital; Presbyterian Hospital and Healthcare Services; Eric. A. Thomas, M.D.; Lovelace Medical Center; Lovelace Health System; G. Michael Lopez, M.D.; New Mexico Spine; Neurosurgery New Mexico; Bélyn Schwartz, M.D.; Claude D. Gelinas, M.D.; Wendy Dimmette, M.D.; and Carlos J. Esparza, M.D., P.C.  *See* [*Docs. 14-1, 14-2, 14-3, 14-4 and 14-5*].  Plaintiff's medical records also include: a Physical Residual Functional Capacity Assessment by Janice Kando, M.D., dated September 25, 2007 (*Doc. 14-3* at 22-29); and a Case Analysis by Mark A. Werner, M.D., dated January 15, 2008 (*id.* at 34).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 10, 2004, the alleged onset date of Plaintiff's disability. [*Doc. 13-3* at 27].  At step two, the ALJ found that Plaintiff has the following severe impairments: "status post left L2-3 laminectomy November 2004 and status post lumbar fusion September 2006 with residual pain and left leg weakness." *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  *Id.* at 27-28.

Before step four, the ALJ determined that, "because of certain impairments related to residual limitations from back surgery and a lumbar fusion," Plaintiff has the RFC "to lift and carry

no more than ten pounds frequently and 20 pounds occasionally . . ., stand and walk no more

than 2-3 hours . . ., and sit 6 to 8 hours . . . before having to rise from a seated position," all during

a normal eight-hour work day. *Id.* at 28. The ALJ further found that, "due to [Plaintiff's] left leg

weakness relating to sciatic pain down the leg, [Plaintiff] has nonexertional limitations associated

with pain and side effects of his medication to prevent concentration at a level to perform job duties

of a skilled nature while in the performance of job duties." *Id.* In support of the RFC finding, the

ALJ states that "neither the objective medical evidence nor any other non-medical evidence

establishes that [Plaintiff's] ability to function is so severely impaired as to preclude the performance

of all work activities," and that "[t]he record contains no objective signs of an incapacitating

impairment, such as muscle atrophy or grossly abnormal neurological deficits." *Id.* at 30. At step

four, the ALJ found that Plaintiff is unable to perform his past relevant work, so the ALJ proceeded

to the fifth step. *Id.* at 31.

At the fifth and final step, the ALJ noted that Plaintiff was 36-years-old at the time of his

alleged onset date, has at least a high school education and is able to communicate in English, and

"has acquired work skills from past relevant work." *Id.* The ALJ stated that "the [VE] was asked

if any occupations exist which could be performed by an individual with the same age, education,

past relevant work experience, and [RFC] as the claimant, and which require skills acquired in the

claimant's past relevant work, but no additional skills," and that the VE testified that there were jobs

available for such an individual. *Id.* at 32. The ALJ stated that "the [VE's] testimony is consistent

with the information contained in the Dictionary of Occupational Titles and in compliance with [the

ALJ's] hypothetical." *Id.* The ALJ concluded that "there are a significant number of jobs existing

in the national economy that [Plaintiff] can perform for a sustained basis." *Id.*  The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.* at 32-33.

## V.  Analysis

Plaintiff contends that the ALJ erred in his RFC assessment because he: (1) failed to include Plaintiff's postural limitations and the impact of his pain; (2) failed to consider Plaintiff's mental limitations; and (3) failed to develop the record with Plaintiff's most recent medical records. [*Doc. 19* at 3, 11-15].  Plaintiff also contends that the ALJ erred in relying on the VE's testimony because that testimony improperly identified Plaintiff's aptitudes as skills.  *Id.* at 15-18.  Finally, Plaintiff contends that the ALJ's credibility finding is contrary to medical evidence in the record. *Id.* at 19-20.  As relief, Plaintiff asks the Court to remand the case for a new hearing.  *Id.* at 21.

In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ's RFC assessment properly included all of Plaintiff's postural and mental limitations, that the ALJ properly developed the medical record and, regardless, Plaintiff's most recent medical records were before the Appeals Council for its review of the ALJ's decision.  [*Doc. 20* at 4-11].  Defendant further states that the ALJ did not err with respect to Plaintiff's transferrable skills, and that the ALJ's credibility finding is supported by substantial evidence.  *Id.* at 12-20.  Defendant, therefore, states that the ALJ's decision is based on substantial evidence and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed.  *Id.* at 20.

## A.  The ALJ's RFC Finding

Plaintiff's first claim is that the ALJ erred by failing to include Plaintiff's postural and mental limitations in her RFC finding, including the impact of Plaintiff's pain, and that, because the RFC was inadequate, the ALJ's hypothetical question to the VE was incomplete and cannot be relied upon.  [*Doc. 19* at 11-14].  Plaintiff also contends that the ALJ failed to develop the record to include Plaintiff's most recent two years of medical records.  *Id.* at 14-15.

In response, Defendant states that the ALJ's RFC determination was adequate because it included all of the postural and mental limitations that are supported by the evidence in the record.  [*Doc. 20* at 4-9].  Defendant states that, even though the hypothetical to the VE "lacked polish" and had "poor phrasing," neither the VE nor Plaintiff's counsel at the hearing asked for clarification, and any error was harmless.  *Id.* at 7, n.5 and 8.  Defendant further states that the ALJ afforded Plaintiff's counsel ample time to supply the most recent medical records and, regardless, those records were considered by the Appeals Council on its review of the ALJ's decision.  *Id.* at 9-11.

In his reply, Plaintiff refutes Defendant's contention that the RFC adequately includes postural and mental limitations, and contends that, because the existence of the missing medical records was obvious from the evidence before the ALJ, it was the ALJ's duty to seek those records.  [*Doc. 21* at 2-6].

### *1.  Postural Limitations in the RFC*

Plaintiff contends that the ALJ's RFC determination is inadequate because it does not include Plaintiff's balancing impairments or a sit/stand option.  [*Doc. 19* at 11-13].  While Plaintiff states in his motion that at step five, it is the ALJ's burden to show that the claimant has the RFC for a

certain level of work (*id.* at 11), Plaintiff clarifies in his reply that it is the ALJ's step-four RFC finding that he is challenging, and that this finding was contrary to substantial evidence in the record (*Doc. 21* at 1-2).  Specifically, Plaintiff contends that weakness in his left leg causes him to lose his balance and fall, which was reported to and mentioned by three different doctors.  [*Doc. 19* at 12] (citing *Doc. 14-1* at 34, *Doc. 14-3* at 9, *Doc. 14-4* at 5, 7, and 17-18).  Plaintiff contends that this evidence is contrary to the ALJ's RFC finding that he can sit for 6 hours and stand for 2-3 hours in an eight-hour work day.  [*Doc. 19* at 12].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").  The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  *Id.* at *5.  Here, the ALJ included in the RFC determination a limitation to lift and carry no more than 10 pounds frequently and 20 pounds occasionally, to stand and walk no more than 2-3 hours a day, and to "sit 6 to 8 hours during a normal eight-hour workday before having to rise from a seated position."  [*Doc. 13-3* at 28].  The evidence in the record shows that Plaintiff has consistently maintained that he has difficulties sitting, standing and walking, such as stating that he changes positions during the day (*Doc. 13-7* at 7); he has difficulty sitting, standing and walking (*id.* at 3 and 12); his left leg has become smaller and

weaker and will give out on him if he walks more than a quarter of a mile (*Doc. 13-3* at 54-55);

bending, squatting and lifting cause him pain (*Doc. 13-7* at 12); and he lies down two to three times

per day and naps during one of those times for a half hour (*Doc. 13-3* at 56).  In addition to

Plaintiff's statements, the following medical evidence shows that Plaintiff has postural limitations:

on March 29, 2007, an examination showed "some minimal loss of balance but no actual leg

buckling" (*Doc. 14-3* at 12); on April 28, 2009, an examination showed "an antalgic[1] gait with

decreased stance phase in the left lower extremity" (*Doc. 14-4* at 17); on February 3, 2010, an

examination showed "mildly positive straight-leg raise on the left and, again, weakness in the

extensor halucis longus on the left" (*id.* at 7); and on March 15, 2010, an examination showed that

Plaintiff's "[m]otor strength is slightly diminished in the left leg, primarily in the quadriceps muscle

group" (*id.* at 5).  In addition, Dr. Kando stated in the Physical RFC Assessment that Plaintiff could

stand, walk and sit, "<u>with normal breaks</u>," for six hours in an eight-hour workday, and the ALJ's

RFC determination does not take those breaks into account.  [*Doc. 14-3* at 23] (emphasis added).

Dr. Kando also found that Plaintiff had postural limitations as to "occasionally" climbing, balancing,

stooping, kneeling, crouching and crawling, and these limitations also were not taken into account

by the ALJ.  [*Id.* at 24].

        The Court finds that the ALJ's RFC determination is not consistent with the evidence in the

record with regard to Plaintiff's postural limitations.  The ALJ is required to explain in his decision

why he did not adopt the opinions that conflict with his RFC finding.  *See* SSR 96-8p,

---

[1]*Stedman's Medical Dictionary* states that "antalgic" is a synonym for "analgesic," and the relevant definition of "analgesic" is: "Characterized by reduced response to painful stimuli."  *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 94 and 67.

1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  Here, the ALJ states only that "neither the objective medical evidence nor any other non-medical evidence establishes that [Plaintiff's] ability to function is so severely impaired as to preclude the performance of all work activities," and that "[t]he record contains no objective signs of an incapacitating impairment, such as muscle atrophy or grossly abnormal neurological deficits." [*Doc. 13-3* at 30].  The medical evidence, however, is contrary to a finding that Plaintiff can walk for two to three hours a day and sit for six to eight hours before he has to rise from a seated position, and the ALJ did not address this evidence in his RFC determination or explain why it was not relied upon.  Additionally, the ALJ should have discussed the postural limitation findings of the state agency physician in his decision pursuant to Social Security Ruling 96-6p and explained why he did not include these limitations in his RFC assessment.  *See* SSR 96-6p, 1996 WL 374180 at *4 ("RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s).").  The Court does not agree with Defendant that these were harmless errors (*see Doc. 20* at 8-9) because the assessment of Plaintiff's ability to walk, sit and stand, and the assessment of Plaintiff's postural limitations, are significant to the assessment of his RFC.  Accordingly, the Court will remand this case to the Commissioner for further evaluation of Plaintiff's physical limitations, and, on remand, the ALJ is directed to reevaluate Plaintiff's physical impairments in accordance with Social Security Rulings 96-8p and 96-6p, and other

11

applicable law.  In so doing, the ALJ should discuss the postural limitation findings of the state agency physician, and provide a rationale for his evaluation of such testimony and findings.

The Court, however, rejects Plaintiff's contention that the ALJ was required to include a specific finding regarding the sit/stand option.  [*Doc. 19* at 12].  Pursuant to Social Security Ruling 96-9p, the ALJ is to include a specific finding regarding the sit/stand option only if the ALJ has found that a claimant can perform less than a full range of sedentary work, and that the claimant's limitations require a sit/stand option.  SSR 96-9p, 1996 WL 374185, at *7 (explaining that the occupational base for a full range of sedentary work will be eroded if the claimant needs to periodically alternate between sitting and standing outside of the accommodations of scheduled breaks and a lunch period).  Here, the ALJ did not make a finding that Plaintiff can perform less than a full range of sedentary work, and did not make a finding that Plaintiff must alternate between sitting and standing.  Plaintiff does not provide any support for a finding that Plaintiff must alternate between sitting and standing, and the Court does not find support in the record for this limitation. As noted above, Dr. Kando's RFC assessment found that Plaintiff could sit for six hours of an eight-hour day with normal breaks, which contradicts the requirement for consideration of a sit/stand option.  *See* [*Doc. 14-3* at 23].  For these reasons, the Court will deny this claim.

### 2.  Mental Limitations in the RFC

Plaintiff next claims that the ALJ failed to properly consider Plaintiff's mental limitations, which Plaintiff contends are: having to take more pain medications in the winter which  make him groggy and forgetful; that when he is in pain, he becomes irritable, anxious, and depressed; and that he loses his train of thought and can only pay attention for twenty minutes.  [*Doc. 19* at 13-14].  In

his RFC determination, the ALJ found nonexertional limitations for Plaintiff that are "associated with pain and side effects of [Plaintiff's] medication to prevent concentration at a level to perform job duties of a skilled nature while in the performance of job duties." [*Doc. 13-3* at 28]. Plaintiff contends that limiting the RFC finding to unskilled and semi-skilled work is not adequate, and that the ALJ's statement that he took administrative notice that Plaintiff self-reported that he could leave home alone and drive does not provide a basis for a finding of a sustained ability to concentrate. [*Doc. 19* at 13-14].

The Court finds that the mental limitation in the RFC was adequate because the ALJ is only required to limit Plaintiff's RFC to the extent those limitations are supported by the record. While Plaintiff made several statements regarding his concentration, there are no findings in the record regarding any mental limitations for Plaintiff. This case is distinguishable from *Chambers v. Barnhart*, No. 03-7007, 2003 WL 22512073, at *3 (10th Cir. Nov. 6, 2003) (unpublished), where the Tenth Circuit held that the ALJ's RFC determination was inadequate as to the claimant's mental limitations because it did not address the specific findings in the record regarding those limitations. Here, there are no specific findings in the record regarding mental limitations, and there is no indication that the record should have been developed to investigate any such limitations. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011) (explaining that an ALJ is not required to take into account or develop the record regarding alleged impairments for which there is no medical testing, diagnoses, or treatment, and "[a] couple of isolated, passing references to depression buried in the record hardly suggested that the medical personnel who examined [the claimant] had missed or ignored a serious mental illness"). In his reply (*Doc. 21* at 4-5), Plaintiff relies on *Winschel v.*

*Commissioner of Social Security*, 631 F.3d 1176, 1181 (11th Cir. 2011) and *Weiderholt v. Barnhart*,

No. 03-3251, 121 Fed. Appx. 833, 839, 2005 WL 290082 (10th Cir. Feb. 8, 2005) (unpublished),

but both of those cases are distinguishable because, in those cases, the ALJs found that the claimants

had mental limitations based on specific findings in the record, but then omitted those limitations

in their hypothetical questions to the VEs and, instead, only included a limitation for simple or

unskilled work.  Here, however, neither the record nor the ALJ's findings include a specific mental

limitation for Plaintiff, so there is no error by the ALJ in limiting Plaintiff to unskilled or semi-

skilled work in either the RFC or the hypothetical question posed to the VE.  The Court, therefore,

will deny this claim.

### 3.  Hypothetical Question to the VE

Plaintiff contends that the hypothetical question the ALJ asked the VE is inadequate because

it was confusing and unclear as to Plaintiff's postural and mental limitations.  [*Doc. 19* at 12-13].

An ALJ must include impairments that are supported by the record in his or her hypothetical

question to a VE.  *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) ("[T]he ALJ's failure to

include in his hypothetical inquiry to the vocational expert *any* limitation in this regard violated the

established rule that such inquiries must include all (and only) those impairments borne out by the

evidentiary record.") (citations and footnote omitted).  The hypothetical posed to the VE in this case

was for a person who can lift and carry no more than 10 pounds frequently, 20 pounds occasionally,

and with the ability to stand and walk no more than two or three hours during an eight-hour work

day.  [*Doc. 13-3* at 61].  The ALJ went on to state:

> The ability to sit for six to eight hours what [sic] has to get up, has to stand up.  The effective approach after an hour or so [sic].  Some standing and sitting, with [sic] the left leg is weaker and there's some atrophy, a sciatica of pain down the leg.  Person has a non-exertional limitation associated with pain and the side effects of medication, concentration for a level for a skill [sic].  Could such a person perform the work that [Plaintiff] performed in the past?

*Id.* at 61-62.  Because the Court has found that this case should be remanded so that the Commissioner can further develop the record regarding Plaintiff's postural limitations, Plaintiff's RFC may be amended on remand.  Accordingly, the Court finds that it is unnecessary to determine whether the hypothetical posed to the VE based on Plaintiff's current RFC is sufficient.  However, the Court notes that the hypothetical posed to the VE, at least as it has been transcribed in the record, is confusing and fails to include with sufficient clarity what limitations the VE is supposed to be considering.  The Court directs the ALJ on remand to more clearly include limitations that are supported by the record in an amended RFC and, if a second hearing is held, in a hypothetical question to the VE.

### 4. *Evidence in the Record*

Plaintiff contends that the ALJ's decision is also in error because the ALJ failed to consider more than 50 pages of relevant evidence that pre-dated the ALJ's decision but were not submitted until after the ALJ made his decision.  [*Doc. 19* at 14].  The evidence was submitted to and considered by the Appeals Council, and is, therefore, part of the record before the Court.  *See* [*Doc. 13-3* at 2-6, *Doc. 14-3* at 35-36, *Doc. 14-4* at 1-52, and *Doc. 14-5* at 1-4].  Plaintiff fails to explain which of these records should have been considered or gathered by the ALJ, or how the records would have affected the ALJ's decision.  Because the records were considered by the

Appeals Council and the Court, and because they will be before the ALJ and will be considered as part of the record on remand, the Court finds that this claim should be denied as moot.

### B.  The VE's Testimony Regarding Plaintiff's Skills

Next, Plaintiff contends that the ALJ improperly found at step five that Plaintiff could perform semi-skilled work because the qualities identified by the VE as transferable skills are actually aptitudes.  [*Doc. 19* at 15-18].  The ALJ found that Plaintiff acquired transferable work skills such as "clerical detail-type skills, record keeping skills, [] skills involved in dealing with the public, and communication skills."  [*Doc. 13-3* at 31].  Plaintiff contends that this finding is in error because: (1) the ALJ did not show that Plaintiff had actually acquired these skills; (2) these are aptitudes, not skills unique to any particular job; (3) the ALJ did not make findings that the jobs identified by the VE require the same skills that Plaintiff acquired in his past work; and (4) the ALJ's finding that Plaintiff could perform the job of cashier is flawed because that job would not accommodate Plaintiff's postural limitations.  [*Doc. 19* at 16-18].

A skill is defined as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn).  It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.  This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery.

SSR 82-41, 1982 WL 31389, at *2.  A claimant's skills can be found to be transferable to other jobs "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet

the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."  20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1).   This transferability "depends largely on the similarity of occupationally significant work activities among different jobs," and "is most probable and meaningful among jobs in which" the same or lesser degree of skill is required, and the same or similar tools and machines, raw materials, products, processes, or services are used or involved. 20 C.F.R. §§ 404.1568(d)(1)-(2), 416.968(d)(1)-(2).   If an ALJ makes a finding that a claimant has transferable skills, the ALJ "must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable," and those "findings should be supported by appropriate documentation."  *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) (citations and internal quotation marks and brackets omitted).  "Neither an occupational title by itself nor a skeleton description of a job is sufficient to document the claimant's acquisition of skills," and "[j]ob titles, in themselves, are not determinative of skill level."  *Id.* (citation and internal quotation marks and brackets omitted).

Here, the ALJ did not identify in his opinion any specific skills acquired by Plaintiff in his past work, and, instead, simply stated that the VE testified that Plaintiff acquired transferable work skills.  [*Doc. 13-3* at 31].  At the hearing, the VE was asked if Plaintiff "has any skills that are transferable to migrant work," and, in response, the VE stated that there are some skills that would transfer.  *Id.* at 60.  When asked what skills would transfer, the VE stated: "In [Plaintiff's] past work he was required to keep records so there are some clerical skills, some record keeping skills, clerical detail type skills.  There are also skills involved in dealing with the public communications skills that would be transferable."  *Id.* at 61.  This statement, however, is not supported by the evidence

17

in the record.  At the hearing, the ALJ did not ask Plaintiff about any specific skills acquired in his

past work (*see Doc. 13-3* at 52-53), and the record does not include any evidence of specific clerical,

record-keeping, or public-communications skills (*see, e.g., Doc. 13-7* at 18-23 (Plaintiff's "Work

History Report" for his past work as a humane officer, waste water laborer, counselor, maintenance

worker, sheriff's deputy and residential advisor/security worker)).  The "skills" listed by Plaintiff

in this work report do not include any reference to specific clerical, record-keeping or public

relations skills.  While Plaintiff states that, as a humane officer, he had to "deal with customer

complaints" (*id.* at 18), this does not provide evidence of a skill "which requires the exercise of

significant judgment that goes beyond the carrying out of simple job duties and is acquired through

performance of an occupation which is above the unskilled level."  SSR 82-41, 1982 WL 31389, at

*2.  Accordingly, there is not substantial evidence in the record that this is a work skill which

Plaintiff acquired in his previous work.  Similarly, in his "Work History Report," Plaintiff was asked

if he: used machines, tools and equipment; used technical knowledge or skills; or wrote, completed

reports or performed other duties like this.  [*Doc. 13-7* at 18-23].  While Plaintiff marked "yes" in

response to these questions for several of his past jobs, these questions do not set forth the specific

skills the ALJ must identify in order to document Plaintiff's acquisition of skills, and are more akin

to the "skeleton description of a job" that the Tenth Circuit in *Dikeman* found was inadequate to

identify a specific skill.  *Dikeman*, 245 F.3d at 1185.  For these reasons, the Court finds that the ALJ

failed to support his findings that Plaintiff acquired transferable work skills in his past work.  On

remand, the ALJ must provide specific findings regarding the skills Plaintiff may have acquired in

his previous work, and those findings should be supported by substantial evidence in the record.

## C.  The ALJ's Credibility Finding

Finally, Plaintiff contends that the ALJ's credibility finding is contrary to the evidence in the record.  [*Doc. 19* at 19-20].  An ALJ's assessment of the credibility of a claimant's description of symptoms "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, at *4, 1996 WL 374186.  The Tenth Circuit has "emphasized that credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002) (citation omitted).  Such credibility findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted); *see also, Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that ALJ's credibility determination was inadequate where decision simply recited general factors he considered and then said claimant was not credible based on those factors but "did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.").

Here, the ALJ stated that, while he recognized that Plaintiff "may experience some degree of pain or discomfort at times of overexertion, [] even a moderate level of pain is not, by itself, incompatible with the performance of certain levels of sustained work activity," and that "neither the objective medical evidence nor any other non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude the performance of all work activities."

[*Doc. 13-3* at 30].  The ALJ provided support for this statement by noting that, after Plaintiff's

lumbar laminectomy, discectomy and fusion for recurrent disk herniation at L2-L3 on

August 25, 2006, Plaintiff's complaints of leg buckling were not revealed in an examination, and,

despite Plaintiff complaining of back and leg pain, Plaintiff "denied any radiation symptoms down

his leg, and objective clinical findings showed the fusion at L2-L3 to be stable." *Id.* at 29.  The ALJ

further noted that Plaintiff reported that his daily activities, *inter alia*, include: showering; walking

half a mile on a good day; alternating sitting and standing; taking his son to school, practices and

appointments; vacuuming and dusting; preparing meals daily; and driving a vehicle.  *Id.* at 30.

These findings regarding Plaintiff's credibility are sufficiently linked to substantial evidence in the

record and the ALJ's statement that Plaintiff is not precluded from performing all work activities,

therefore, is not merely a conclusion in the guise of findings.  While Plaintiff contends that the

evidence in the record supports a finding that Plaintiff is incapacitated, the Court will not re-weigh

the evidence nor substitute its judgment for that of the Commissioner.  *See Hamlin*, 365 F.3d at 1214

and *Langley*, 373 F.3d at 1118.  Because the ALJ set forth the reasons supporting his credibility

assessment as required, the Court finds that this claim should be denied.

## VI.  Conclusion

        In conclusion, the Court **FINDS** that the ALJ failed to apply correct legal standards in

assessing Plaintiff's RFC regarding postural limitations and in assessing whether Plaintiff has

acquired skills from his past relevant work.  Accordingly, the Court will **GRANT** Plaintiff's ***Motion***

***to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 19)* and

**REMAND** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

      **IT IS THEREFORE ORDERED** that Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 19)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order. A final order will be entered concurrently with this Memorandum Opinion and Order.

      **IT IS SO ORDERED.**


**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**

21